JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Oleksandr Loboda
1993 Keswick Way
Norristown, PA 19403

**DEFENDANTS**
EISAI, Inc.
155 Tice Boulevard
Woodcliffe Lake, NJ 07677

**(b)** County of Residence of First Listed Plaintiff     Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Peter George Mylonas, Esquire
2725 West Chester Pike
Broomall, PA 19008

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                   *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.A. Section 1332
Brief description of cause:
Diversity of Citizenship

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
806,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE  4/26/17

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Oleksandr Loboda | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| EISAI, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court. (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　(x)

| | | |
|---|---|---|
| 4/26/17 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-355-1000 | 610-355-2470 | peter.mylonas@mylonaslaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: ___1993 Keswick Way, Norristown, PA 19403___

Address of Defendant: ___155 Tice Boulevard, Woodcliffe Lake, NJ 07667___

Place of Accident, Incident or Transaction: ___155 Tice Boulevard, Woodcliffe Lake, NJ___
_(Use Reverse Side For Additional Space)_

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☐

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒
RELATED CASE, IF ANY:

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. _Federal Question Cases:_

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. _Diversity Jurisdiction Cases:_

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9.   All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
_(Check Appropriate Category)_

I, _____ , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____    _____    _____
                     Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __4/26/17__    _____    ___52562___
                     Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

PETER GEORGE MYLONAS, ESQUIRE
ID #52562
LAW OFFICES OF PETER GEORGE MYLONAS, P.C.
2725 WEST CHESTER PIKE
BROOMALL, PA 19008
(610) 355-1000
FAX (610) 355-2470

Attorney for Plaintiff

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OLEKSANDR LOBODA        )    Docket No.:
1993 KESWICK WAY       )
NORRISTOWN, PA 19403   )
     Plaintiff          )
    vs.                 )
EISAI, INC.              )
155 TICE BOULEVARD
WOODCLIFF LAKE, NJ 07677
      Defendant

### COMPLAINT IN CIVIL ACTION

#### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages; you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by court without any further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

     YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

#### AVISO

Le han demandado an usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las päginas siguientes, usted tiene veinte (20) dias, de plazo al partir de ía fecha de ía demands y la notificatidn. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus the objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomard medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademds, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demands. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POD TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVER IGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

PETER GEORGE MYLONAS, ESQUIRE
ID #52562
LAW OFFICES OF PETER GEORGE MYLONAS, P.C.
2725 WEST CHESTER PIKE
BROOMALL, PA 19008
(610) 355-1000
FAX (610) 355-2470

Attorney for Plaintiff

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OLEKSANDR LOBODA<br>1993 KESWICK WAY<br>NORRISTOWN, PA 19403<br>      Plaintiff<br>   vs.<br>EISAI, INC.<br>155 TICE BOULEVARD<br>WOODCLIFF LAKE, NJ 07677<br>      Defendant | ) Docket No.:<br>)<br>)<br>)<br>)<br>)<br>) |

### COMPLAINT IN CIVIL ACTION
### JURISDICTION

1. Jurisdiction in this action is based on diversity of citizenship, and is conferred upon this Honorable Court by the provisions of 28 U.S.C.A. Section 1332 (Supp. 1986) (Diversity of citizenship) in that **PLAINTIFF, OLEKSANDR LOBODA** is an adult individual and citizen and resident of the Commonwealth of Pennsylvania, residing therein at 1993 Keswick Way, Norristown, Montgomery County, Pennsylvania 19403, and the **DEFENDANT, EISAI, INC.** is upon information and belief, a New Jersey Corporation with a registered place of business at 155 Tice Boulevard, Woodcliffe Lake, New Jersey, a foreign State, and the matter in controversy exceeds the sum or value of **TEN THOUSAND DOLLARS ($10,000.00)** exclusive of interest and costs.

## PARTIES

2. **PLAINTIFF, OLEKSANDR LOBODA** is an adult individual, citizen and resident of the Commonwealth of Pennsylvania, residing therein at the above-captioned address.

3. **DEFENDANT, EISAI, INC.** is upon information and belief, a New Jersey corporation with its registered place of business at 155 Tice Boulevard, Woodcliff Lake, New Jersey.

## FACTUAL BACKGROUND

4. **PLAINTIFF** was hired by **DEFENDANT**, on January 31, 2013 as a Senior Quality and Compliance Manager in Oncology Data Operations with an annual base salary in 2015 of $129,000.00 plus an annual performance bonus plan of 16-20% of base pay for performance that "meets expectations" within **DEFENDANT'S** performance management system.  A true and correct copy of **DEFENDANT'S** written contractual offer of employment, dated January 31, 2013, which was accepted by **PLAINTIFF** on February 4, 2013 is attached hereto, made a part hereof and incorporated herein by reference as **EXHIBIT "A"**.

5. **DEFENDANT** provided **PLAINTIFF** with an employee handbook at the inception of **PLAINTIFF'S** employment in February, 2013 and **DEFENDANT'S** fiscal year is May 1 through April 30.

6. **PLAINTIFF** reported to his immediate superior, Sunanda Choudhury, **DEFENDANT'S** Sr. Director of Date Operations and indirectly to Hieu Ly, **DEFENDANT'S** Executive Director of Data Management, Oncology, PCU (Product Creation Unit).

7. In mid 2015, **PLAINTIFF** uncovered false pharmaceutical data while reviewing **DEFENDANT'S** management folder which consisted of five (5) aggregated days review

files by DEFENDANT'S Study Statisticans (B.W. and J), which clearly revealed the data reviewed by DEFENDANT'S Statistics group were unblinded, whereupon, PLAINTIFF provided DEFENDANT written comments to correct the unblinding of data, which constituted a critical violation by DEFENDANT of clinical study conduct (pursuant to Good Clinical Practice - FDA regulations on Clinical Trial conduct) and ICH requirements (FDA and EMA regulations); and MUST be reported by PLAINTIFF in order to assess error impact on DEFENDANT'S Clinical Trial conduct and results, and as consequence, PLAINTIFF met his supervisor and indirect superior (Hieu Ly and Sunanda Choudhury) to apprise DEFENDANT of the false data, but DEFENDANT'S Hieu left the room and refused to acknowledge, nor see the false data files, nor address PLAINTIFF'S issue, saying "I do not want to see these files and I do not want to know this".

8. In June, 2015 PLAINTIFF traced DEFENDANT'S emails in preparation for a perfunctory inquiry by the FDA and discovered the unblinding of data by DEFENDANT was not accidental but was systematic and intentional by DEFENDANT in the development, approval and marketing of DEFENDANT'S oncological pharmaceuticals for inter-state commerce.

9. In June, 2015 through April, 2016, PLAINTIFF researched DEFENDANT'S Excel files related to oncological pharmaceutical dry runs, which revealed DEFENDANT had its bio-staticians falsely respond to an FDA inquiry whether DEFENDANT had 'accidental' unblinding.

10. PLAINTIFF expected DEFENDANT'S Hieu Ly and Sunanda Chowdhury to take action to correct said unblinded study anomalies, but DEFENDANT did nothing to correct the false data reported to the FDA, in the development, approval and marketing

of DEFENDANT'S oncological pharmaceuticals for inter-state commerce and instead DEFENDANT deliberately misrepresented to the FDA that the unblinding was "accidental" with no clinical impact knowing same to be completely false.

11. PLAINTIFF fractured his foot in July, 2015 and was asked by DEFENDANT to remain in actively involved during post-surgery rehabilitation, in order to support DEFENDANT'S FDA submission for another project and was forced by DEFENDANT to take disability six (6) months later at the beginning of an on-site FDA audit and upon his return to work on January 24, 2016, PLAINTIFF reviewed information provided by DEFENDANT to the FDA, whereupon PLAINTIFF discovered documents proving DEFENDANT'S systematic unblinding was not reported nor presented to the FDA at audit by DEFENDANT, but instead, the unblinding was falsely and fraudulently introduced by DEFENDANT as accidental with no impact on trial results, as PLAINTIFF determined that none of the data which proved the unblinding which PLAINTIFF reported to his superiors were disclosed by DEFENDANT to the FDA.

12. In or about 2014 through 2015, DEFENDANT'S bio-staticians were knowingly reviewing unblinded oncology pharmaceutical data, which compromised DEFENDANT'S scientific research, in the development, approval and marketing of DEFENDANT'S oncological pharmaceuticals for inter-state commerce.

13. In January, 2016,  PLAINTIFF discovered five (5) of DEFENDANT'S files, which contained proof of false data reporting to the FDA, no longer exist and have improperly been deleted by DEFENDANT, in an effort by DEFENDANT to hide the truth.

14. PLAINTIFF reasonably assumed DEFENDANT would properly undertake an action plan to correct the unblinding issue in its oncology pharmaceutical studies and to properly report same to the FDA, but DEFENDANT did nothing.

15. PLAINTIFF asked his superiors at DEFENDANT whether other oncology pharmaceutical Phase 3 studies also had improper unblinding, but DEFENDANT failed to respond.

16. During PLAINTIFF'S disability absence from December 2015 through and including January, 2016, DEFENDANT'S Database Manager (A.M.) admitted to PLAINTIFF there were several other studies (including but not limited to Hope304-HCC) that had a difference in data collection (days and visits) that made it easy for DEFENDANT to aggregate data by treatment and unblind (repeating the same error) and DEFENDANT'S aforesaid Database Manager further admitted to PLAINTIFF that no further action was taken by DEFENDANT to correct the blinding error and DEFENDANT deliberately failed to report it to the FDA in the development, approval and marketing of DEFENDANT'S oncological pharmaceuticals for inter-state commerce.

17. The PLAINTIFF told DEFENDANT unblinding was occurring in other of its oncology pharmaceutical studies.

18. At all material times hereto, DEFENDANT'S data integrity plan was weak, and was not implemented in its Phase 3 oncology studies.

19. At all material times hereto, DEFENDANT'S bio-staticians readily had access to unblinded oncology pharmaceutical data, which is a significant study conduct error, constituting risk to patient's health, which if properly disclosed by DEFENDANT to the FDA, would cause DEFENDANT to lose Medicare funds had DEFENDANT disclosed its study misconduct.

20. At all material times hereto, DEFENDANT'S oncology pharmaceutical data integrity plan was not implemented correctly.

**21.** In or about January, 2016, **PLAINTIFF** observed continuing improper access by **DEFENDANT** personnel to unblinded oncology pharmaceutical data.

**22.** In March, 2016, **PLAINTIFF** reviewed **DEFENDANT'S** data correction documentation in an RCC Study and discovered there are over 200 pages of data records which were improperly corrected by **DEFENDANT** with "Note to File," so as to absolve itself from proper reporting to the federal regulatory agencies and to improperly exclude said tampered data from an Errata Form, which is a part of a Clinical Study Report required by federal regulations.

**23. PLAINTIFF'S** Whistle Blower Report of said improper records, alterations, data manipulations and changes by **DEFENDANT'S** staff, (consisting of over 200 pages), was given to his superiors, Hieu Ly and Sunanda Chowdhury, at **DEFENDANT** Company in the spring of 2016.

**24. PLAINTIFF** expected his Whistle Blowing Report to be shown to his superior, Sunanda Chowdhury but **PLAINTIFF** was fired by **DEFENDANT** on May 7, 2016 in retaliation for preparing said revelatory report.

**25.** The pre-text of **DEFENDANT'S** termination of **PLAINTIFF** was allegedly for **PLAINTIFF** attending conferences in violation of a restriction on the non-disclosure of intellectual property, but none of **DEFENDANT'S** information was disclosed, at any industry conferences where **PLAINTIFF** gave presentations/lectures, whatsoever.

**26.** At all material times hereto, **DEFENDANT** engaged in continuous site data changes, significant unauthorized data changes and splitting adverse event records into two (2) different records, which **PLAINTIFF** uncovered and reported to **DEFENDANT**.

**27. PLAINTIFF** was fired by **DEFENDANT** in retaliation for his 200 page Whistle Blowing Report of March, 2016.

28. PLAINTIFF had uncovered over 200 records 'notes to files' wrongfully altered by DEFENDANT, in an effort by DEFENDANT to wrongfully obtain FDA approval in the development, approval and marketing of DEFENDANT'S oncological pharmaceuticals for inter-state commerce.

29. At all material times hereto, DEFENDANT intentionally hid oncology pharmaceutical errata and adverse event reports and failed to disclose same to the FDA in the development, approval and marketing of DEFENDANT'S oncological pharmaceuticals for inter-state commerce.

30. In addition to PLAINTIFF, DEFENDANT assigned another employee, Khaled Biano to also investigate DEFENDANT'S unauthorized data changes and said co-employee confirmed to PLAINTIFF the existence of over two hundred (200) of DEFENDANT'S improper notes to file, which DEFENDANT perpetrated in order to improperly skew study results to the FDA.

31. PLAINTIFF expected his supervisor, Hieu Ly to send PLAINTIFF'S Report to DEFENDANT'S upper management, but PLAINTIFF'S supervisor failed to do so.

32. On or about April 22, 2016 PLAINTIFF was summoned to a meeting with Cyndee Trussler, Director of DEFENDANT'S H/R Oncology PCU, wherein DEFENDANT orally fired PLAINTIFF and PLAINTIFF told Hieu Ly and Sunanda Chowdhury that his termination by DEFENDANT was retaliatory.

33. On or about April 22, 2016, DEFENDANT'S Cyndee Trussler called PLAINTIFF to orally terminate his employment with DEFENDANT and PLAINTIFF later received a formal mail notification of his firing from DEFENDANT, dated May 7, 2016. A true and correct copy of DEFENDANT'S written termination confirmation, dated May 7,

2016 is attached hereto, made a part hereof and incorporated herein by reference as EXHIBIT "B".

34. DEFENDANT'S pre-text for firing PLAINTIFF was an alleged publishing violation by PLAINTIFF at an industry convention at Arena International.

35. As part of the pretext for wrongfully terminating PLAINTIFF, DEFENDANT demanded PLAINTIFF first obtain prior clearances from DEFENDANT'S supervisors, Hieu Ly and Sunanda Chowdhury before PLAINTIFF apply to and attend any industry conferences, and PLAINTIFF complied.

36. PLAINTIFF'S conference presentations were disclosed in DEFENDANT'S performance review.

37. Notwithstanding DEFENDANT'S pre-text for firing PLAINTIFF, no intellectual property information was disclosed by PLAINTIFF at any conference presentation by PLAINTIFF.

38. PLAINTIFF received an email in 2014 from DEFENDANT'S Hieu Ly to follow DEFENDANT'S publishing procedures, but PLAINTIFF'S conferences/presentations did not involve DEFENDANT'S information, rendering said requirement inapplicable.

39. PLAINTIFF volunteered to attend conferences at Arena International.

40. PLAINTIFF was wrongfully terminated by DEFENDANT on May 7, 2016, in retaliation for discovering and reporting all of the foregoing, all of which were significant study conduct errors perpetrated by DEFENDANT constituting a significant risk to the health and welfare of the general public:

(i) DEFENDANT'S data base locking process, was not being followed, as all DEFENDANT'S study teams look at oncology pharmaceutical data, authorized by DEFENDANT'S management.

(ii) **DEFENDANT** engaged in accessing locked/unlocked oncology pharmaceutical data after reporting it to the FDA as **DEFENDANT'S** data manager was improperly opening locked data for modification after data was reported to FDA.

(iii) **PLAINTIFF** discussed all of the foregoing improprieties in 2015 and 2016 with **DEFENDANT'S** Hieu Ly and Sunanda Chowdhury and was told by **DEFENDANT**: "this is how we do it".

(iv) **DEFENDANT'S** Clinical study data base is being continuously altered by **DEFENDANT** after reporting records to government agency (FDA).

41. **PLAINTIFF** reported all of the foregoing significant study conduct errors to Sunanda Chowdhury, **DEFENDANT'S** Senior Director/Head of Data Operations, Oncology Product Creation Unit and was fired in retaliation for reporting said illegal misconduct perpetrated by **DEFENDANT,** which if left unreported constitutes a significant health risk to patients and if properly reported would result in Medicare fund loss to **DEFENDANT** due to **DEFENDANT'S** aforesaid study misconduct.

## COUNT I
## RETALIATION

42. Paragraphs 1 through 41 are incorporated herein by reference as though set forth herein at length.

43. **PLAINTIFF** hereby makes a claim against **DEFENDANT** for retaliation/wrongful discharge.

44. At all material times hereto, from June 2015 through and including May 7, 2016, **PLAINTIFF** was engaged in a protected activity, to wit: uncovering and reporting illegal clinical research data tampering, said conduct of which was protected by the

Whistleblower Law, 43 P.S. Section 1421 and the Whistleblower Protection Act, 5 U.S.C.A. Section 2302 and 2304.

**45.** At all material times hereto, between June, 2015 through and including May 7, 2016, **DEFENDANT,** as **PLAINTIFF'S** employer, was aware of the aforesaid protected whistle blowing activities.

**46.** Subsequent to his participating in the aforesaid whistle blowing activities, **DEFENDANT,** as **PLAINTIFF'S** employer, subjected the **PLAINTIFF** to an adverse employment action, to wit: terminating **PLAINTIFF'S** employment officially on May 7, 2016.

**47.** There is a causal connection between **PLAINTIFF'S** participation in the aforesaid protected whistle blowing activities and the adverse employment action perpetrated by **DEFENDANT,** by firing **PLAINTIFF** officially on May 7, 2016.   See written Dismissal and Notice of Rights issued by the US Equal Employment Opportunity Commission, dated January 27, 2017, which is attached hereto, made a part hereof and incorporated herein by reference as **PLAINTIFF'S EXHIBIT "C".** See also <u>Circle Bolt & Nut Co., Inc. v. Pa. Human Relations Comm'n,</u> 954 A.2d 1265, 1268-69 (Pa. Commw. Ct. 2008)

**WHEREFORE, PLAINTIFF,** demands judgment against the **DEFENDANT,** in an amount in excess of $806,000.00, as well as reasonable attorney's fees, treble damages, plus lawful interest and costs of suit, pursuant to the (WPCL) 43 P.S. Section 260.1, et seq.

## COUNT II
## BREACH OF CONTRACT

**48.** Paragraphs 1 through 47 are incorporated herein by reference as though set forth herein at length.

**49.** PLAINTIFF performed all work as required pursuant to his position as Senior Quality and Validation Specialist in Oncology PCU Data Operations.

**50.** DEFENDANT is in breach of its contractual obligations to PLAINTIFF by terminating him on May 7, 2016 in retaliation for uncovering and reporting illegal conduct being perpetrated by DEFENDANT.

**51.** PLAINTIFF is entitled to the remainder of the compensation consistent with the employment contract. (See EXHIBIT "A").

**52.** PLAINTIFF was wrongfully discharged on May 7, 2016 by DEFENDANT in retaliation for uncovering and reporting DEFENDANT'S illegal conduct.

**53.** PLAINTIFF was not compensated by DEFENDANT for his earned annual 20% performance bonus, which accrued during the fiscal year: May 1, 2015 through May 7, 2016 calculated as follows:  PLAINTIFF'S annual income: $130,000.00 x 20% annual bonus = $26,000.00

**54.** As a result of DEFENDANT'S breach of contract, PLAINTIFF has suffered monetary damages in excess of $130,000.00 annual salary, plus loss of medical benefits, basic life insurance benefits, retirement plans and outstanding reward and recognition points.

**55.** Implicit in every employment contract, oral or written, is an implied covenant that both parties will act in good faith and deal fairly with each other.

56. DEFENDANT, as employer, failed to act in good faith and deal fairly with PLAINTIFF when it terminated his employment for simply uncovering and reporting illegal conduct by DEFENDANT, while he was Senior Quality and Validation Specialist.

WHEREFORE, PLAINTIFF, demands judgment against the DEFENDANT, in an amount in excess of EIGHT HUNDRED SIX THOUSAND DOLLARS ($806,000.00), plus lawful interest and costs of suit.

**COUNT III**
**VIOLATION OF BOTH PENNSYLVANIA AND NEW JERSEY WAGE**
**PAYMENT & COLLECTION LAWS**

57. Paragraphs 1 through 56 are incorporated herein by reference as though set forth herein at length.

58. At all material times hereto, between January 31, 2013 through and including May 7, 2016, PLAINTIFF has a contract of employment with the DEFENDANT.

59. PLAINTIFF was an employee and DEFENDANT was an employer within the meaning of both the Pennsylvania Wage Payment and Collection Law ("WPCL") 43 P.S. Section 260.1, et seq. and New Jersey Wage Payment and Collection Laws, N.J.S.A. 34: 11-4.1 et seq.

60. PLAINTIFF'S right to wages and bonuses was vested under the terms of the parties' employment contract.

61. DEFENDANT, as employer, has failed to pay PLAINTIFF the promised salary, as well as for his 2015-2016 bonus, plus loss of medical benefits, basic life insurance benefits, retirement plans and outstanding reward and recognition points.

62. DEFENDANT breached a contractual obligation to pay PLAINTIFF wages and bonuses.

63. PLAINTIFF is entitled to a mandatory award of reasonable attorney's fees.

WHEREFORE, PLAINTIFF, demands judgment against the DEFENDANT, in an amount in excess of $806,000.00, as well as reasonable attorney's fees, treble damages, plus lawful interest and costs of suit, pursuant to the (WPCL) 43 P.S. Section 260.1, et seq. and the New Jersey Wage Payment and Collection Laws, N.J.S.A. 34:11-4.1 et seq.

## COUNT IV
### VIOLATION OF PENNSYLVANIA WHISTLE BLOWER LAW, 43 P.S. SECTION 1421 & WHISTLE BLOWER PROTECTION ACT, 5 U.S.C.A. SECTIONS 2302 & 2304 AND NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT 34:19-1, et seq.

64. Paragraphs 1 through 63 are incorporated herein by reference as though set forth herein at length.

65. PLAINTIFF was an employee and DEFENDANT was an employer within the meaning of the Pennsylvania Whistle Blower Law, 43 P.S. Section 1421, et seq. and the Whistle Blower Protection Act, 5 U.S.C.A. Sections 2302 and 2304 and the New Jersey Conscientious Employee Protection Act 34:19-1, et seq.

66. DEFENDANT, as employer, has failed to pay PLAINTIFF the promised salary, as well as for his 2015-2016 bonus, plus loss of medical benefits, basic life insurance benefits, retirement plans and outstanding reward and recognition points.

67. DEFENDANT, in wrongfully discharging PLAINTIFF in retaliation, for his aforesaid Whistle Blowing activities as aforesaid, has violated the Pennsylvania Whistle Blower Law, 43 P.S. Section 1421 et seq. and the Whistle Blower Protection Act, 5 U.S.C.A. Sections 2302 and 2304 and the New Jersey Conscientious Employee Protection Act 34:19-1, et seq.

WHEREFORE, PLAINTIFF, demands judgment against the DEFENDANT, in an amount in excess of $806,000.00, as well as reasonable attorney's fees, treble damages, plus lawful interest and costs of suit, pursuant to the (WPCL) 43 P.S. Section 260.1, et seq. the Whistle Blower Protection Act, 5 U.S.C.A. Sections 2302 and 2304 and the New Jersey Conscientious Employee Protection Act 34:19-1, et seq.

## COUNT V
## WRONGFUL DISCHARGE

**68.** Paragraphs 1 through 67 are incorporated herein by reference as though set forth herein at length.

**69.** At all material times hereto, between January 31, 2013 through and including May 7, 2016 PLAINTIFF had a contract of employment with DEFENDANT.

**70.** On or about May 7, 2016, DEFENDANT wrongfully discharged PLAINTIFF from employment.

**71.** PLAINTIFF, as an employee of DEFENDANT, hereby states a claim for wrongful discharge where:

(a) DEFENDANT violated a clear mandate of public policy by retaliating against PLAINTIFF for whistle blowing DEFENDANT'S misconduct, as aforesaid; and

(b) DEFENDANT, as employer, has no plausible and legitimate reason for terminating PLAINTIFF'S employment;

(c) DEFENDANT, as employer, cannot require PLAINTIFF, as employee, to commit a crime by hiding and ignoring DEFENDANT'S unblinded oncology pharmaceutical data, constituting significant study conduct error constituting a risk to public health and safety, which DEFENDANT by its actions deliberately sought to suppress and not disclose to the FDA;

(d) DEFENDANT, as employer cannot prevent PLAINTIFF, as employee, from complying with a statutorily imposed duty pursuant to the Whistle blowing Act, as aforesaid;

(e) DEFENDANT, as employer cannot discharge PLAINTIFF, as an employee when specifically prohibited from doing so by the aforesaid Whistle blowing Act;

(f) DEFENDANT, as employer cannot wrongfully discharge PLAINTIFF, as employee due to the fact that a public policy exception exists and is recognized where the public policy is so obviously for the preservation of the public health, safety, morals and welfare, which precludes DEFENDANT, as employer, from wrongfully discharging PLAINTIFF.

WHEREFORE, PLAINTIFF, demands judgment against the DEFENDANT, in an amount in excess of EIGHT HUNDRED SIX THOUSAND DOLLARS ($806,000.00), plus lawful interest and costs of suit.

RESPECTFULLY SUBMITTED:

LAW OFFICES OF PETER GEORGE MYLONAS, P.C.

BY: _____

      PETER GEORGE MYLONAS, ESQUIRE
      Attorney for Plaintiff

DATED: 4/26/17

# V E R I F I C A T I O N

I, **OLEKSANDR LOBODA,** verify that the statements and facts set forth in the foregoing **COMPLAINT IN CIVIL ACTION** are true and correct to the best of our knowledge, information and belief and that this statement is subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

**OLEKSANDR LOBODA**

Date: 4/26/17



Eisai Inc.
155 Tice Blvd.
Woodcliff Lake, NJ 07677
Telephone: 201-949-4000

January 31, 2013

Oleksandra Loboda
1993 Keswick Way
Norristown, PA  19403

Dear Oleksandra:

Employees of Eisai Inc. ("Eisai" or the "Company") are committed to our global human health care mission (*hhc*).  Our tradition of genuine concern for people, our dedication to excellence and our contributions to the communities in which we work and live are hallmarks of our Company.

It is with great pleasure that we confirm our offer of employment to join our Eisai team as Manager, Validation & QC, Band 4.  In such position, you will be an exempt employee and not entitled to overtime pay.

Your supervisor will be Sunanda Chaudhuri, Senior Director, Database Operations, Oncology PCU, contact # (201) 949-4354.  Your scheduled start date, as discussed, is February 11, 2013.

Your annual base salary is $115,000, payable semi-monthly on the 10th and 25th of each month and subject to applicable taxes, withholding, and deductions. Merit reviews, if any, are finalized in the first quarter of the fiscal year. If merit increases are granted, your eligibility date would be on May 1, 2014.

Your position is eligible to participate in EPCS's Annual Performance Bonus Plan, with a target bonus range of 12% to 15% of base pay for performance that "meets expectations" within our performance management system.  Your receipt of a bonus award and the amount of the award is subject to satisfactory individual performance as well as your Unit's performance and the Company's overall performance.  Depending on individual, Unit and Company performance, the bonus award may be greater or less than the target bonus range and it is possible that no bonus may be awarded. Eisai's performance year aligns with the Company's Fiscal Year and runs from April 1 through March 31.  Your bonus eligibility will begin with Fiscal Year 2013, which encompasses the period April 1, 2013 through March 31, 2014. You must be employed by Eisai at time of distribution to receive payment.  The Company reserves the right to terminate, amend and/or modify the bonus program at any time, in its sole discretion.



EXHIBIT

"A"



As set forth by Eisai's Paid Time Off (PTO) policy, you are eligible for 20 days of Paid Time Off (PTO) per year, subject to a quarterly accrual schedule. During your first calendar year of employment, the number of allotted days will be determined on a pro-rated basis. PTO days are made available to you effective with your first day of employment, consistent with the quarterly accrual schedule.

You are eligible for relocation benefits under Eisai's Relocation Program. The enclosed Relocation Program Summary provides an overview of the program. Human Resources will initiate the relocation benefit upon receipt of your signed offer letter. Once activated, a relocation counselor from Prudential will contact you to explain your specific benefits and answer any questions you may have. In order to receive your relocation benefit, you must sign and return the enclosed "Repayment Agreement" to Human Resources by your start date.

Eisai offers a comprehensive benefit package that is one of the most competitive within the pharmaceutical industry and the marketplace. These benefits include:

- Health Insurance- Eligibility begins on date of hire.
    - o Medical
    - o Dental
    - o Prescription
    - o Vision

- Life, Disability and Accident Insurance- Eligibility begins on date of hire.

- The Eisai Retirement Plan:
  (401k Plan)
  Eligibility begins on the 1st of the month following date of hire. For 2013, the plan provides an employer Match of 100% of the first 3% of base pay and 50% of the next 2% of base pay. Both your contributions as well as the employer match have 100% immediate vesting. The employer match is reviewed annually.

  Employer Annual Contribution
  Eligibility begins on the 1st of the month following ninety (90) days of employment. You must be employed on December 31st of the current plan year, and have completed 1000 or more hours of service during the plan year to be eligible for a contribution. The plan vests 100% after 3 years.

The Company reserves the right to amend and/or modify the benefits program at its' sole discretion.

Please refer to the attached *Summary of Programs* for a more detailed explanation of our rich benefit offerings.



Eisai is committed to the highest ethical standards and to complying with all applicable laws and regulations. We are also committed to protecting and preserving the health and safety of our employees. To this end, we carefully screen all new hires to ensure that their goals and values are in line with ours. As part of this process, this offer of employment is contingent upon satisfactory completion of our reference checking process. This includes reference checks on all aspects of your education, previous employment history and a criminal history background check. In addition, we require a New Hire Drug Screen.

Regarding the drug screen and background check, please complete the following forms and return them via fax to Kathleen Galvin, fax # (201) 949-4569.
- Drug Screening Authorization Form
- Fair Credit Reporting Act Authorization (Please ensure that you have provided a current e-mail address)

(Please refer to the *"YOUR NEXT STEPS"* INSTRUCTION SHEET.)

As a condition of employment, you are required to sign the enclosed copy of Eisai's *Confidentiality, Invention and Non-Solicitation Agreement*. Eisai expects you to retain in confidence and not to disclose to third parties any confidential or proprietary information you obtain from Eisai, its parent or its affiliated companies during your employment with Eisai. Likewise, Eisai respects the confidential and proprietary information of others. Therefore, Eisai expects that you will not disclose or use during your employment with Eisai confidential or proprietary information derived from previous employers or other sources.

This letter is not an employment contract. It is intended solely to summarize some of the terms and conditions of your employment, and is subject both to Eisai's personnel policies and to the specific terms of its fringe benefit plans and incentive programs. Your employment with Eisai is entirely voluntary for both Eisai and you, and is "at-will" employment. By accepting employment with Eisai, you acknowledge that either one of us is free to terminate our employment relationship at any time for any reason.

Please indicate your acceptance of these terms and conditions by following the instructions on the Instruction Sheet called *"YOUR NEXT STEPS"*. In order for us to proceed with this offer, it is important to return, via fax, the first (4) items listed on the *"YOUR NEXT STEPS"* Instruction Sheet. To ensure continuity of Eisai's business needs, we would appreciate your acceptance of this offer by February 5, 2013.

All newly hired employees are required to participate in Eisai's Orientation program. You will be receiving information in the mail to complete for your Day 1 "Express" Orientation. Further information regarding additional aspects of Eisai's Orientation program will be communicated to you in upcoming weeks. Keep a look out for this information!

We are looking forward to working with you. We are confident you will find this to be a professionally challenging and rewarding environment.



Welcome to the beginning of your "Eisai Experience"!

Sincerely,

Cyndee Trussler
Director, Human Resources
Oncology PCU

Accepted:

Oleksandra Loboda

Date: _04 - Feb -_, 2013

Enclosures:

Confidentiality, Invention & Non-Solicitation Agreement
The Eisai Experience Summary of Programs
"Next Steps" Instruction Sheet
Drug Screening Consent & Procedure Sheet
Drug Screening Chain of Custody Form
Fair Credit Reporting Act Authorization & Instruction Sheet
New Hire Information Form
W-4 Form
Direct Deposit Form
Employee Instructions for Completing Electronic I-9 Form
Relocation Policy
Repayment Agreement



May 7, 2016

Oleksandr Loboda
1993 Keswick Way
Norristown, PA  19403

Dear Alex:

This letter will confirm that your employment with Eisai Inc. has ended effective April 22, 2016. Please be sure to notify us at ESIHumanResources@eisai.com if your contact information changes to ensure that future correspondence reaches you (i.e. remaining paychecks, W2 Tax Statements).

The below information is provided to help answer questions regarding your transition from employment with Eisai Inc.

**Payroll Information**
Your final regular paycheck will include your regular earnings through your last day of employment. For exempt salaried employees, final pay is calculated based on the number of days worked and the total number of working days in the period.  For example, if the last day worked is the third business day of the pay period, and there are a total of 11 working days in the period, the final pay would be calculated as: semi-monthly rate / 11 working days X 3 days worked.

Depending on the timing, you may receive any remaining accrued but unused PTO either with your final paycheck or in a separate check on the following payday, unless otherwise required by applicable state law. Our records indicate that as of today's date, you have 9 accrued and unused PTO days. If you take any additional PTO days prior to the end date listed above, the amount of PTO days you will be paid out for will be reduced by the number of days taken.

If you participate in direct deposit, the above payments will be made accordingly. If you do not participate in direct deposit, the above payments will be made via a live check which will be sent to you by regular US mail to your last address on file with the Company.

If you previously registered for the ADP iPay website you will continue to be able to access it to view the details of your final paycheck following your termination by accessing it via the iPay website:  **https://ipay.adp.com/iPay/login.jsf**. You will have access to iPay for a period of up to 3 years following your termination date. Prior to your termination date, you must log in to ADP iPay and ensure that your email address is your



EXHIBIT
" B "

personal email address, and not an Eisai email address so that you can continue to use all of the functionality of the ADP iPay system (i.e. if you forget your password, an email is sent to the email on record in the system). If you have not registered for the site by your termination date, you will not be able to access ADP iPay.

## Benefits Information
### Medical/Rx, Vision and Dental Insurance

Your health insurance (medical/Rx, vision and dental) coverage ends on the last day of the month in which you are employed. If you elected to participate in Eisai's medical/Rx, vision or dental plan(s) prior to your termination Date, you will be eligible for COBRA continuation for those benefits you were enrolled in, for up to 18 months. For example, if you participated in Eisai's Premier Plus Plan for medical/Rx and elected dental coverage, but not vision coverage, you will be eligible for COBRA continuation at the Premier Plus level for the medical/Rx and dental plans only. Under COBRA, you may also choose not to continue current benefits coverage. For example, if you are currently enrolled in the dental plan, you may choose not to extend your coverage under COBRA. However, you may not add coverage under a plan in which you were not enrolled as of your termination date. Please retain your existing benefit ID cards for use under COBRA.

You will have 60 days to elect COBRA coverage. If you decide to elect COBRA, it will be effective retroactive to the first of the month following your Termination Date. You will receive a COBRA packet within the next 1-2 weeks with more information from our COBRA vendor, Benefit Concepts. The packet will contain all of the information you need to enroll in COBRA and maintain your benefits coverage. For more information please call Benefit Concepts at 800-969-2009.

### Basic Life Insurance

As an employee, Eisai provided a life insurance benefit to you at no cost. This policy will expire on your last day of employment. You have the option to convert this policy to an individual policy through MetLife. A package will be mailed to you from MetLife within 2 weeks from your termination date. If you have questions, please contact MetLife at 866-492-6983.

### Voluntary Benefits

As an employee, you may have elected to participate in one or more of the Voluntary Benefits that Eisai offers, including Voluntary Life Insurance, Group Home, Group Auto or Group Pet Insurance. These policies will expire on your last day of employment. These plans offer a portability option in which you can continue your coverage. If you are interested in this option, please call MetLife at 800-438-6388.

### Flexible Spending Accounts
### Health Care FSA

If you participated in a Health Care FSA, you may continue to submit eligible expenses incurred through the end of the month in which you terminate your employment with Eisai. Claims must be submitted no later than March 31 following the end of the Plan year. You also have the option of continuing your coverage through COBRA so that you

may submit claims that are incurred after the end of the month in which you terminated your employment with Eisai.

### Dependent Care FSA

If you participated in a Dependent Care FSA, you may continue to submit eligible expenses incurred through the end of the year in which you terminate your employment with Eisai. Claims must be submitted no later than March 31 following the end of the Plan year. There is no option to extend your Dependent Care FSA under COBRA.

### Retirement Plan

If your account balance is greater than $1,000, you may leave your balance in the Eisai Retirement Plan. If your account balance is less than $1,000, Fidelity will pay the balance out in the coming calendar quarter.

If you have an outstanding loan, the loan will default at the end of the calendar quarter in which the repayments were discontinued unless you pay off the loan in full. Please contact Fidelity at 800-835-5097 for additional information regarding repayment of the loan.

If you choose to rollover your account or take a lump sum distribution, you can begin the process by calling Fidelity at 800-835-5097.

Information regarding your Eisai Retirement Plan (401K and Employer Annual Contribution) will be sent to you directly from Fidelity Investments within 30 days of your termination date.

## Outstanding Reward & Recognition Points

The points you've earned through the Spotlight on Excellence or Performance Zone programs remain yours for redemption after termination. You will have access to your points and the entire award offering as you do now. To access the Spotlight on Excellence or Performance Zone site, visit **https://eisairecognition.performnet.com**

Login to the site using your credentials and you will be brought directly to the catalog and your points balance. You can access the site as many times as needed to use the balance of your points. If you have questions concerning merchandise, call 800-870-6927.

If you've forgotten your password, click on the Contact Us link in the bottom left side of the page and complete the following steps:
- In the Email box, type your home email address
- In the Subject box, type Requesting a password
- In the Question box, include your Eisai Global ID and request a one-tie password.

## Unemployment

Employees should contact their local state unemployment agency for information about eligibility and filing requirements for receiving unemployment.

3

For New Jersey employees, the enclosed BC-10 Unemployment Form provides important information and instructions on how to file an unemployment claim.

## Employment Verifications

Eisai uses The Work Number to provide automated employment and income verifications on our employees. You can access The Work Number by phone (call 1-800-367-5690) or to access via the web, go to www.theworknumber.com. Please see the enclosed brochure for additional information on how to use The Work Number.

## Final Expense Report (if applicable)

If you have any outstanding business expenses, please complete the attached Final Expense Report form and mail along with applicable receipts to your manager for approval.

Please be sure to resolve any outstanding issues with your AMEX account  As a reminder, you are personally accountable for all charges made with your AMEX card and are responsible for checking all transactions are valid.  Please be sure to complete the following:

- Review your AMEX statement to ensure your final expense report reimbursement will clear any outstanding balances that were eligible for reimbursement.
- Clear any outstanding merchant disputes
- Resolve and pay any outstanding late fees which are the cardholders responsibility
- Cut up your AMEX card and destroy it.

Please also be aware that any outstanding balances that are not paid in a timely manner may impact your personal credit rating. Any questions regarding AMEX card disputes, statements, or late fee assessments should be addressed to AMEX at 1-800-528-2122.

## Document Preservation Obligations

In order to ensure that records are retained in accordance with Eisai's Record Management Program and Document Preservation Notice obligations, you must return all materials that are subject to document preservation notices to your manager.  If you have any questions as to what materials are to be returned to Eisai pursuant to your document preservation obligations, please contact Megan Westerberg, Senior Counsel Litigation, at 201-746-2798.

## Company Property and Confidentiality Agreement

Please be sure to return any company property that remains in your possession to ensure that the close out process has been completed. As a reminder, the confidentiality agreement that you signed upon hire continues to remain in effect after your employment with Eisai ends.

4

We wish you the best of luck in your future endeavors.

Kind regards,

Cyndee Trussler, Director, HR
Eisai Inc.

Enclosures:

BC-10 Unemployment Form (for NJ based employees)
The Work Number Brochure
Final Expense Report Form (if applicable)

5

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Oleksandr Loboda<br>1993 Keswick Way<br>Norristown, PA 19403 | From: **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107** |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2017-01178 | **Legal Unit** | (215) 440-2828 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

_____
**Spencer H. Lewis, Jr.,**
**District Director**

1/27/17
*(Date Mailed)*

cc:
Shaji Procida
President and Chief Operating Officer
EISAI, INC.
155 Tice Boulevard
Woodcliff Lake, NJ 07677

Peter Mylonas, Esq.
LAW OFFICES OF PETER GEORGE MYLONAS, P.C.
Marple Executive Center
2725 West Chester Pike
Broomall, PA 19008

**EXHIBIT**
tabbies
"C"